## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT REGONINI,<br><br>    Plaintiff,<br><br>    v.<br><br>DJD MEDICAL, INC.; and DOMENIC J. DINARDO, MEDICAL DEVICE BUSINESS SERVICES, INC., DEPUY SYNTHES SALES, INC., and JOHNSON & JOHNSON SERVICES, INC.,<br><br>    Defendants. | Case No.:  21-CV-11651<br><br>**JURY TRIAL DEMANDED** |

## NOTICE OF REMOVAL

Defendants Medical Device Business Services, Inc. (f/k/a DePuy Orthopaedics, Inc.) ("DePuy"), Johnson & Johnson ("J&J") and Johnson & Johnson Services, Inc. (collectively, the "removing defendants"), by their undersigned attorneys, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the District of Massachusetts.

## NATURE OF THE ACTION

1.    On or about March 18, 2021, plaintiff Robert Regonini, a citizen of the Commonwealth of Massachusetts, filed a lawsuit in the Superior Court of Suffolk County titled *Regonini v. DJD Medical, Inc.*, No. 21-0683 E.  (*See* Compl. (attached as Ex. 1).)  In his Complaint, plaintiff asserted product liability claims against DJD Medical, Inc. ("DJD") and Dominic J. Dinardo, President of DJD.  On August 24, 2021, plaintiff sought leave to file an Amended Complaint that added DePuy, DePuy Synthes Sales, Inc. ("DSS"), J&J and Johnson &

Johnson Services, Inc. as defendants.  The Court granted plaintiff leave to file his amended complaint on August 27.

2.      Plaintiff's Amended Complaint alleges that "J&J designed and manufactured the MoM Pinnacle system" (Am. Compl. ¶ 12 (attached as Ex. 2)), and plaintiff's alleged injuries "were proximately caused by J&J's failure to properly test its MoM implants" and "J&J's Distributor's failure to properly warn the public regarding the known dangers of the Pinnacle" (*id.* ¶ 34).

3.      This is one of thousands of similar cases filed around the country involving personal injury allegations by plaintiffs who were implanted with a Pinnacle Cup System, a hip replacement device manufactured by DePuy Orthopaedics, Inc.  On May 23, 2011, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2244, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, 787 F. Supp. 2d 1358 (J.P.M.L. 2011), before Judge James E. Kinkeade in the United States District Court for the Northern District of Texas.  Removing defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Panel's Rules.

4.      The present case reflects the latest forum-shopping strategy by the law firm representing Mr. Regonini – i.e., attempting to evade federal diversity jurisdiction (and inclusion in the Pinnacle MDL proceeding) by initially naming one or two peripheral in-state distributors of the Pinnacle Cup System as the sole defendants, and then subsequently joining the removing defendants and/or other J&J-affiliated entities, which are obviously the real intended targets of the litigation.

5.     While the fraudulent joinder doctrine has generally been applied in cases where a plaintiff simultaneously names a nominal non-diverse defendant alongside a fully diverse, proper defendant, it is the validity of the claims asserted against the non-diverse defendant – not the order of joinder – that controls the question of federal subject-matter jurisdiction.  Otherwise, plaintiffs could avoid removal by this new tactic, which is their clear intent.

6.     As set forth more fully below, this case is properly removed pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over it pursuant to 28 U.S.C. § 1332 and the removing defendants have satisfied the procedural requirements for removal.

## I.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

7.     The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.  The Parties That Are Not Fraudulently Joined Are Diverse.

8.     Plaintiff is a citizen of the Commonwealth of Massachusetts.  (Am. Compl. ¶ 1.)

9.     DePuy is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

10.     Johnson & Johnson Services, Inc. and Johnson & Johnson are, and were at the time plaintiff commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

11.     DSS is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business in Raynham, Massachusetts, and is therefore a citizen of the Commonwealth of Massachusetts for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

12.     DJD and Dinardo are alleged to be citizens of the Commonwealth of Massachusetts.  (Am. Compl. ¶¶ 2, 3.)

13.     Thus, plaintiff is diverse from all defendants except DSS, DJD and Dinardo.

14.     Although DSS, DJD and Dinardo are alleged to be citizens of Massachusetts, their presence in this action does not defeat diversity jurisdiction because they are fraudulently joined, as explained further below.

15.     Accordingly, there is complete diversity of citizenship between plaintiff and the properly joined and served defendants and thus, removal is proper.  28 U.S.C. §§ 1332(a), 1441(a).

### B.  Plaintiff Has Fraudulently Joined DSS, DJD and Mr. Dinardo, And Their Citizenship Should Therefore Be Disregarded.

16.     "A plaintiff may not thwart the exercise of a defendant's right of removal by fraudulently joining a non-diverse defendant who has no real connection to the case."  *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 321, 332 (D. Mass. 2015).  Under the fraudulent-joinder doctrine, a court should disregard the citizenship of a defendant where, as here, "'there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted' against the forum-state defendant."  *Bay Equity LLC v. Total Mortg. Servs., LLC*, No. 1:20-cv-10693-IT, 2020 WL 7353404, at *3 (D. Mass. Dec. 15, 2020) (citation omitted); *see also Universal Truck & Equip. Co. v. Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014) ("While the First

Circuit has not addressed the question, it is generally recognized that, under the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant.").

> **1)      Plaintiff's Claims Against DSS Have No Possibility Of Success Because DSS Did Not Even Exist Until Four Years After Plaintiff's Surgery.**

17.      Plaintiff's claims against DSS are doomed to fail because DSS was not even created until four years *after* the events that form the basis of plaintiff's lawsuit.

18.      Plaintiff asserts five causes of action against the removing defendants (including DSS) for negligence, breach of express and implied warranty, negligent misrepresentation and unfair business practices under the Massachusetts Consumer Protection Act.  These claims are premised on the core allegations that the removing defendants negligently manufactured the Pinnacle Cup System (*see* Am. Compl. ¶ 217), negligently misrepresented to plaintiff and his surgeon that the Pinnacle Cup System was safe (*see id.* ¶ 257), and failed to provide plaintiff and his surgeon with adequate warnings regarding the Pinnacle Cup System (*see id.* ¶ 270).

19.      None of these claims has any reasonable possibility of success with respect to DSS for the simple reason that DSS did not even exist until 2012 – four years *after* plaintiff was implanted with the Pinnacle Cup System.  (*See* Decl. of Marc Larkins ¶ 7, Sept. 16, 2021 (attached as Ex. 3).)  As courts have recognized, a corporate defendant "cannot possibly be found liable for any purported tortious conduct that took place *before* the company came into existence." *See White v. Sherwin-Williams Co.*, No. 19-11580, 2020 WL 1064939, at *3 (E.D. La. Mar. 5, 2020) (emphasis added) (citation omitted) (dismissing product-liability claims against defendant that was not incorporated until after the events giving rise to plaintiff's claim because "an insurmountable bar to relief exists"); *see also Jones v. Int'l Riding Helmets, Ltd.*,

145 F.R.D. 120, 124 (N.D. Ga. 1992) (product-liability claim against company that "was not incorporated at the time [the product] entered the market" was "objectively frivolous"), *aff'd*, 49 F.3d 692 (11th Cir. 1995).

20.     This is so because a company that did not exist at the time of the events giving rise to the plaintiff's injury could not have ***caused*** that injury – a fundamental element of each of plaintiff's claims under Massachusetts law.  *See Bjorgolfsson v. Destination Bos. Hotel, Inc.*, No. 05-01353E, 2006 WL 2623925, at *4 (Mass. Super. Ct. Aug. 28, 2006) ("To be liable for negligent conduct, one must have failed to discharge a duty of care owed to the plaintiff, harm must have been reasonably foreseeable, and the breach or negligence must have been the proximate or legal cause of the plaintiff's injury.") (citation omitted); *Jackson v. Johnson & Johnson & Janssen Pharms., Inc.*, 330 F. Supp. 3d 616, 624 (D. Mass. 2018) ("Causation is an essential element to demonstrate negligence . . ., breach of warranty . . . and unfair or deceptive acts or practices."); *Pluviose v. Select Portfolio Servicing, Inc.*, No. 18-12347-PBS, 2019 WL 1936217, at *7 (D. Mass. Apr. 12, 2019) (negligent misrepresentation claims require a plaintiff to prove that the defendant made a false statement "causing and resulting in pecuniary loss") (citation omitted).

21.     Accordingly, DSS has been fraudulently joined and its citizenship should be disregarded for diversity purposes.

>           **2)     Plaintiff's Claims Against DJD And Dinardo Have No Possibility Of Success Under Massachusetts Law.**

22.     Plaintiff's claims against DJD and Dinardo also have no possibility of success under Massachusetts law for multiple reasons.  In fact, a federal court overseeing another Pinnacle Cup System case brought by the same law firm representing Mr. Regonini recently denied a motion to remand a similar lawsuit to state court, finding that the distributor defendants

in that case were fraudulently joined.  *See Hall v. OrthoMidwest, Inc.*, No. 1:21-cv-00897, 2021 WL 2093444 (N.D. Ohio May 24, 2021) (holding that allegations did not give rise to "plausible" inference that distributor defendants had any knowledge of any alleged defect in the Pinnacle Cup System or that they made any "independent" representation to the plaintiff's surgeon and that, in any event, any such allegations were refuted by the declaration submitted by the distributors in that case, which the plaintiff did not counter with any evidence of his own).

23.     ***First***, plaintiff's negligence claim against DJD and Dinardo has no possibility of success because he cannot establish that either one violated any duty that it owed him.

24.     It is axiomatic that to prevail on a negligence claim under Massachusetts law, a plaintiff must first establish that "the defendant owed the plaintiff a duty of reasonable care." *Rousseau v. Home Depot USA, Inc.*, No. 060808, 2010 WL 1077149, at *2-3 (Mass. Super. Ct. Mar. 12, 2010) (citation omitted).  In product-liability actions, non-manufacturers of a product generally are not liable for negligence unless they "knew or had reason to know of the dangerous condition that caused the accident."  *Labrador v. Indus. Contractors' Supplies, Inc.*, No. 13-CV-13029-MLW, 2017 WL 9249481, at *6 (D. Mass. Feb. 10, 2017), *report and recommendation adopted as modified sub nom. Labrador v. Indus. Contractors' Supplies, Inc. & 3M Co.*, No. 13-13029-MLW, 2017 WL 3835665 (D. Mass. Sept. 1, 2017); *see also Shuras v. Integrated Project Servs., Inc.*, 190 F. Supp. 2d 194, 200 (D. Mass. 2002) (distributor of tank was not liable for negligence or breach of warranty where there was "no evidence to suggest that [distributor] ***knew or had reason to know*** of any defects in the tank").

25.     Moreover, entities such as DJD and Dinardo that "neither designed, manufactured, nor installed" the product at issue have "no obligation to perform a safety check" of the product.  *Satchi v. Rheon U.S.A., Inc.*, 255 F. Supp. 3d 253, 262-63 (D. Mass. 2017).

Stated another way, "[o]n either theory of liability" (i.e., failure to warn or failure to inspect or test), "the plaintiffs . . . must demonstrate that [the non-manufacturer defendant] knew or had reason to know that the [product at issue] posed a danger to consumers." *Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646, 668 (E.D. Pa. 2012).

26.     As a threshold matter, plaintiff's allegations regarding knowledge are all lodged against "Distributor" (i.e., both DJD and Dinardo collectively).  (*See, e.g.*, Am. Compl. ¶¶ 116, 118-121, 135.)  Plaintiff's failure to "distinguish[] between which [d]efendant" knew what information is a telltale sign of fraudulent joinder and that plaintiff's claims against both defendants have no reasonable possibility of success.  *Hall*, 2021 WL 2093444, at *6.

27.     Further, most of the allegations are not colorable for the additional reason that they are asserted in a conclusory manner, simply alleging that "Distributor" "knew or should have known" about the purported defects in the Pinnacle Cup System.  (*See, e.g.*, Am. Compl. ¶ 142; *id.* ¶ 106 ("Distributor knew or should have known that this messaging regarding lubrication, run-in wear, and survivorship would misrepresent the safety and efficacy of the Pinnacle."); *id.* ¶ 101 ("Distributor, specifically, knew or should have known that the claims regarding the Pinnacle's lubrication were limited to laboratory settings and not clinically relevant."); *id.* ¶ 105 ("Distributor knew or should have known that the theory of 'run-in' wear was not clinically proven to occur with the Pinnacle.").)  Such "bald or conclusory allegations that a defendant 'knew' of a product defect . . . do not establish colorable claims of negligence." *Moore*, 907 F. Supp. 2d at 668 (denying remand and finding a retailer fraudulently joined based on similar allegations).

28.     None of plaintiff's other allegations comes close to pleading a colorable basis for inferring that either DJD or Dinardo had the requisite knowledge of any supposed defect either.

For example, plaintiff alleges that "Distributor" "independently gained knowledge" of the Pinnacle Cup System through the orthopedic community by attending "conferences," "workshops," and revision surgeries involving the product.  (*See* Am. Compl. ¶¶ 121, 122 ("Distributor would attend conferences and workshops held by a variety of professionals and gain knowledge from sources independent of J&J."); *id.* ¶ 133 ("Distributor attended numerous surgeries in which a MoM hip system, including the ASR or Pinnacle system, was revised due to a metal reaction.").)  But the *Hall* court rejected these boilerplate allegations, which do not allege ***what*** purported knowledge the distributor defendants supposedly gained and how such as-yet-unidentified knowledge put these defendants on notice that the Pinnacle Cup System was allegedly defective.  *See Hall*, 2021 WL 2093444, at *5 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  As the *Hall* court put it, knowledge of revision surgeries does not equal knowledge of specific product defects because "[p]roduct revisions and defects are two very different things."  *Id*.  In short, these allegations are no less conclusory than plaintiff's allegations that "Distributor" "knew or should have known" of a purported defect.[1]

29.     In any event, plaintiff's conclusory and implausible allegations are directly contradicted by the declaration submitted by Mr. Dinardo showing that neither DJD nor Mr. Dinardo "had any knowledge of any alleged manufacturing, design, or other defect in the Pinnacle hip replacement system at any time material to plaintiff's Complaint."  (*See* Decl. of Domenic J. Dinardo ("Dinardo Decl.") ¶ 19, Oct. 1, 2021 (attached as Ex. 4).)  As the *Hall* court explained, such evidence provides an independent basis for finding that negligence claims

---

[1]     Plaintiff also alleges that "Distributor" should have gained relevant knowledge through the ASR recall – which involved a ***different*** hip implant and occurred ***after*** Mr. Regonini was implanted with the Pinnacle Cup System in 2008, and is therefore irrelevant.  (*See* Am. Compl. ¶¶ 169-176 (plaintiff alleging Distributor Defendants' knowledge based on "the ***2010*** recall of the ***ASR***") (emphases added).)

against a distributor and one of its employees are destined to fail.  *See Hall*, 2021 WL 2093444, at *5 (relying on similar declaration and finding that "[p]laintiff can have no recovery against the [d]istributor [d]efendants"); *see also Bay Equity LLC*, 2020 WL 7353404, at *4 ("[W]here the inquiry is whether there is a plausible claim against [non-diverse defendant], specifically, the court finds the undifferentiated allegations against 'Defendants' in the Amended Complaint [#3-1] insufficient to rebut [defendants'] uncontradicted affidavits disavowing her knowledge . . . .").

30.     Finally, even assuming plaintiff could somehow establish knowledge on the part of either DJD or Dinardo, he would still not be able to establish how such knowledge ***caused*** plaintiff's injury.  *See Bjorgolfsson*, 2006 WL 2623925, at *4 ("To be liable for negligent conduct, one must have failed to discharge a duty of care owed to the plaintiff, harm must have been reasonably foreseeable, and the breach or negligence must have been the proximate or legal cause of the plaintiff's injury.") (citation omitted); *see also Glidden v. Maglio*, 722 N.E.2d 971, 974 (Mass. 2000) (explaining that "[c]ausation is an essential element" of a negligence claim). In *Hall*, the plaintiff alleged that "the [d]istributor [d]efendants selectively provided the manufacturer with their knowledge of revision surgeries," which ultimately "result[ed] in surgeons and hospital procurement personnel deciding to use the product of the Johnson & Johnson Defendants, which led to Mr. Hall's alleged injuries."  *Hall*, 2021 WL 2093444, at *5. According to the court, "such an attenuated chain of events does not amount to proximate cause . . . even on a claim that the [d]istributor [d]efendants should have known of a product defect."  *Id.* The same is true here because Mr. Regonini likewise alleges the same "attenuated chain of events" – i.e., that "Distributor" "attended numerous surgeries," that "Distributor" "failed to report to J&J regarding each . . . revision" surgery, and that as a result of "Distributor['s]

fail[ure] to share this critical information," "[p]laintiff's orthopedic surgeon was unaware of this information material to the care and treatment of [p]laintiff."  (Am. Compl. ¶¶ 133-146.)

31.     The Amended Complaint also attempts to plead causation based on "Distributor" somehow participating in Mr. Regonini's implantation surgery itself.  (*See, e.g.*, *id.* ¶ 183 ("Distributor attended [p]laintiff's surgery to provide the inventory of implant components as well as surgical instruments to utilize during implantation and any other assistance as requested by [p]laintiff's surgeon and surgical staff."); *see also id.* ¶¶ 129-132, 181-185 (similar).) However, these allegations are foreclosed by Mr. Dinardo's declaration.  (*See* Dinardo Decl. ¶ 11 ("Neither I nor DJD was responsible for the implantation of devices, and neither I nor any other employee of DJD ever assisted in such implantation.  Neither I nor any other employee of DJD ever had any physical contact with a patient while in the surgical suite; in fact, neither I nor any other employee of DJD was permitted to be in the sterile field of any operating room.").)

32.     For all of these reasons, plaintiff's negligence claim against DJD and Dinardo has no reasonable possibility of success.

33.     ***Second***, plaintiff's claims for breach of express and implied warranty against DJD and Dinardo are destined to fail because DJD and Dinardo are not "sellers" for purposes of warranty law.  *See* Mass. Gen. Laws Ann. ch. 106, § 2-313(1) ("Express warranties by the ***seller*** are created as follows . . . .") (emphasis added); *see also id.* § 2-314(1) ("Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the ***seller*** is a merchant with respect to goods of that kind.") (emphasis added); *see also Philips v. Northrop & Johnson*, No. 96-1605, 1997 U.S. App. LEXIS 597, at *6 (1st Cir. Jan. 14, 1997) ("We therefore find that defendant [broker] is not the seller of the boat within the meaning of § 2-314 and the implied warranty of merchantability is inapplicable.").  As

courts have recognized, warranty claims are only properly brought against the manufacturer that sold the product – not against distributors of the manufacturer's products. *See, e.g.*, *Kite v. Zimmer US, Inc.*, No. 2:06-CV-0745-RCJ (RJJ), 2006 U.S. Dist. LEXIS 85420, at *11-12 (D. Nev. Nov. 21, 2006) (denying motion to remand on fraudulent-joinder grounds where non-diverse distributor "could not be held liable in Nevada under the theories of strict product liability and warranty because it [was] not a 'seller'" of the medical device at issue in the lawsuit); *Wade Transp., Inc. v. Puckett Mach. Co.*, No. 2:07CV6KS-MTP, 2007 WL 1521202, at *4 (S.D. Miss. May 24, 2007) (denying motion to remand on grounds that non-diverse distributor was improperly joined under theories of breach of warranty because distributor was "not a 'seller'" and thus could not be held liable under Mississippi's identical Uniform Commercial Code statute regarding claims for breach of implied warranty of merchantability); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286 (S.D.N.Y. 2001) (sales representatives were fraudulently joined because, *inter alia*, no warranty claim could possibly be asserted against them insofar as they "were not 'sellers' of the product for purposes of warranty; the 'seller' who impliedly warranted the merchantability of Rezulin was the pharmaceutical manufacturer").

34. Although plaintiff alleges that DJD and Dinardo "sold hundreds, if not thousands of Pinnacle . . . systems" (*see* Am. Compl. ¶ 114), this conclusory allegation is belied by Mr. Dinardo's declaration. As that declaration makes clear, DJD and Dinardo did ***not*** sell Pinnacle Cup Systems; rather, DePuy sells its products directly to hospitals. (*See* Dinardo Decl. ¶ 6 ("DJD does not currently and never has purchased products from DePuy; nor has it ever taken

title to or obtained an ownership interest in the products.  Rather, **_DePuy_** sells its products directly to hospitals.") (emphasis added).)[2]

35.    Because neither DJD nor Dinardo was the seller – and thus, neither was the warrantor – of the Pinnacle Cup System in this case, plaintiff's claims for breach of express and implied warranty against these defendants necessarily fail as a matter of law.

36.    **_Third_**, plaintiff's negligent misrepresentation and Chapter 93A claims against DJD and Dinardo are facially deficient because plaintiff does not allege the existence of a specific misrepresentation made by either DJD or Dinardo – much less identify one that plaintiff or plaintiff's surgeon relied on in choosing the Pinnacle Cup System.  _See Pluviose_, 2019 WL 1936217, at *7 (noting that "a claim for negligent misrepresentation requires" – in part – that plaintiff show that defendant "supplied false information for the guidance of others," who were injured "by their justifiable reliance on the information," and that defendant "failed to exercise reasonable care or competence in obtaining or communicating the information") (citation omitted); _Tomasella v. Nestle USA, Inc._, 962 F.3d 60, 71 (1st Cir. 2020) ("To plausibly state a Chapter 93A claim premised on a deceptive act, the plaintiff must allege '(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.'") (citation omitted).

---

[2]    Removing defendants acknowledge that Judge Talwani rejected this argument in another case.  _See In re Stryker LFIT V40 Femoral Head Prods. Liab. Litig._, MDL No. 17-md-2768-IT, 2017 WL 3815937 (D. Mass. Aug. 31, 2017).  There, the court concluded that there was a "reasonable possibility that Massachusetts courts would find that [p]laintiffs' breach of warranty . . . claim against" the distributor "would survive."  _Id._ at *4.  However, it did so on the narrow ground that an entity need not take title of a product to qualify as a seller under Massachusetts law. _Id._  That is not the argument being pressed here.  Rather, as discussed in text, DJD does not fall within the scope of the Massachusetts warranty provisions because **_DePuy_** sells its products **_directly_** to hospitals.

37.     Importantly, "[c]laims of fraud or negligent misrepresentation must be pleaded with [the] particularity" required by Fed. R. Civ. P. 9(b).  *Wade v. Tri-Wire Eng'g Sols., Inc.*, No. 20-10523-LTS, 2021 WL 847989, at *6 n.8 (D. Mass. Mar. 5, 2021); *see also Adrion v. Knight*, No. 07-11277-RGS, 2009 WL 3254342, at *8 & n.7 (D. Mass. Sept. 9, 2009) (the "heightened pleading requirements," which mandate that a party "provide particulars as to the time, place and content of the alleged false or fraudulent misrepresentation," "appl[ies] to both intentional and negligent misrepresentation claims") (citation omitted), *report and recommendation adopted in part, rejected in part on other grounds*, No. 07-11277-RGS, 2009 WL 3152885 (D. Mass. Sept. 28, 2009).  Chapter 93A claims based on fraudulent conduct are subject to similar requirements. *Valley Container Co. v. Liberty Mut. Grp., Inc.*, No. 19-cv-12133-DJC, 2020 WL 3270848, at *6 (D. Mass. June 17, 2020) (dismissing Chapter 93A claim where it "fail[ed] to meet the particularity standard for a claim based on fraud" since Chapter 93A claims based on fraudulent conduct are "subject to the particularity requirements of Rule 9(b)"); *Bryan Corp. v. Chemwerth, Inc.*, No. 12-10446-MLW, 2013 WL 6489785, at *6 (D. Mass. Dec. 9, 2013) (dismissing Chapter 93A counterclaim where defendant "ha[d] not identified with any specificity the alleged misrepresentations on which it is relying in support of its 93A claim").  To satisfy this heightened standard, a plaintiff "must provide particulars as to the time, place and content of the alleged false or fraudulent misrepresentation."  *Adrion*, 2009 WL 3254342, at *8 (citation omitted).

38.     Here, as with plaintiff's allegations regarding knowledge, none of plaintiff's representation-based allegations pass muster under any pleading standard because they are directed at "Defendants" and do not differentiate between any supposed representations made by any defendant in particular, much less one upon which Mr. Regonini's surgeon supposedly

14

relied.  (*See, e.g.*, Am. Compl. ¶ 257 (alleging that "Defendants have failed in their duty to disclose known material facts to the [p]laintiff and [p]laintiff's surgeon regarding the Pinnacle . . . .").)  As the *Hall* court explained in construing similar allegations, such pleading does not "distinguish[] between which [d]efendant allegedly made any representation to which the product may not have conformed" and is woefully inadequate.  2021 WL 2093444, at *6.

39.     Moreover, plaintiff fails to specify ***what*** information any distributor ***specifically*** provided to plaintiff's surgeon.  Instead, the Amended Complaint largely presses vague allegations – for example, that "[p]rior to [p]laintiff's surgery, Distributor provided information to [p]laintiff's orthopedic surgeon regarding the Pinnacle."  (Am. Compl. ¶ 178.)  The only instance of a specific misrepresentation alleged in the complaint relates to claims made in promotional materials (*see id.* ¶ 66), and even then, there are no specific allegations that DJD or Dinardo created those materials themselves or passed them on to others, let alone when – or even if – they provided them to plaintiff's surgeon, *see Lowenstern v. Residential Credit Sols.*, No. 11-11760-MLW, 2013 WL 697108, at *5 (D. Mass. Feb. 25, 2013) (allegations must identify "the who, what, where, and when of the allegedly false or fraudulent representation[s]" to satisfy Rule 9(b)) (citation omitted).  Indeed, those promotional materials clearly bear the name "DePuy" and show (at most) that ***DePuy*** (not DJD or Dinardo) made a representation regarding the Pinnacle Cup System.  (*See* Am. Compl. ¶ 66.)  *See Hall*, 2021 WL 2093444, at *6 ("Even on the face of the amended complaint, the representations [p]laintiff alleges the [d]istributor [d]efendants made actually came from DePuy.").  This comports with Mr. Dinardo's declaration, which makes clear that all marketing and promotional materials related to the Pinnacle were created by DePuy, not DJD or Dinardo, and neither DJD nor Dinardo had any control or influence over these materials.  (*See* Dinardo Decl. ¶ 17.)  For this reason as well, there is no possibility that plaintiff can prevail

15

on his negligent misrepresentation or Chapter 93A claims against DJD or Dinardo. *See Hall*,

2021 WL 2093444, at *6 ("In any event, the record establishes that the [d]istributor [d]efendants

had no role in creating any marketing or promotional materials related to the Pinnacle device.").[3]

40.     Accordingly, none of plaintiff's claims against DJD or Dinardo has any

reasonable possibility of success under state law, and their citizenship should be disregarded for

diversity purposes.[4]

> **3)     There Is Also No Possibility That Plaintiff Will Prevail On His Claims Against DJD And Dinardo Because Such Claims Are Preempted.**

41.     Even if any of plaintiff's claims against DJD and Dinardo were somehow

cognizable under state law, they would still be doomed to fail because such claims against ***non-***

***manufacturers*** of an FDA-cleared product are preempted. *See PLIVA, Inc. v. Mensing*, 564 U.S.

604, 624-25 (2011); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013). As already discussed,

plaintiff does not allege any facts capable of establishing that DJD or Dinardo, who provided

DePuy's products to physicians and hospitals, played any role in the manufacture or design of

the Pinnacle Cup System, and the evidence in the record establishes that they did not. (*See*

Dinardo Decl. ¶¶ 13, 14.)

---

[3]     Plaintiff's claim for breach of express warranty also has no possibility of success for this additional reason as well, as plaintiff has failed to allege any specific promise that DJD or Dinardo made to him or his surgeon regarding the Pinnacle Cup System. *See Jackson*, 330 F. Supp. 3d at 627 ("'[P]laintiff must demonstrate that the defendant ***promised*** a specific result' and that defendant failed to deliver on his promise and, therefore, breached the express warranty.") (emphasis added) (citation omitted).

[4]     Plaintiff's claim against the non-diverse defendants under Chapter 93A separately has no prospect of success because it is derivative of the common-law causes of action, which are doomed to fail. *See, e.g., Martz v. Dranetz*, No. SUCV201601179BLS2, 2018 WL 4938768, at *4 (Mass. Super. Ct. Aug. 30, 2018) (granting summary judgment on Chapter 93A claim where it was "based on the same conduct underlying the common-law claims" the court had dismissed); *Calianos v. Commerce Ins. Co.*, No. 10-3977-BLS1, 2012 WL 414464, at *7 (Mass. Super. Ct. Dec. 19, 2011) (granting summary judgment on Chapter 93A claim where it "rest[ed] on the same conduct that form[ed] the basis of the other claims" and "the evidence offered d[id] not support those claims"); *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 889 (Mass. 2008) (where "[a]n implied warranty claim and a c. 93A claim are based on the same economic theory of injury and the same set of alleged facts, they should survive or fail under the same analysis").

42.     In *Mensing*, the U.S. Supreme Court ruled that all claims against generic drug manufacturers that were premised on a failure to warn are preempted by federal law based on the principle of impossibility preemption.  564 U.S. at 624-25.  According to the Supreme Court, generic manufacturers cannot be held liable on a theory of failure to warn because generic manufacturers have no power to unilaterally effectuate a label change; rather, they must use the same labels and warnings as those approved by the FDA with respect to the brand-name version of the drug.  *Id*. at 613-15.  Thus, as long as the labels and warnings for the generic form of the drug match the labels and warnings that the FDA has approved for the brand-name form of the drug, generic manufacturers cannot as a matter of law be held liable under state tort law for failing to warn.

43.     As other courts have found, these principles apply in spades to non-manufacturing defendants such as DJD and Dinardo.  After all, these particular defendants had "no authority" to effectuate changes to the product or its labeling either.  *See, e.g.*, *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), No. 3:08-cv-00008-JAP-LHG, 2012 U.S. Dist. LEXIS 5817, at *26-28 (D.N.J. Jan. 17, 2012) (because a distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it'") (citation omitted); *see also Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, [the defendant] had no ability to change labeling or warnings and thus, like a generic manufacturer, [it] cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

44.     In *In re Fosamax*, for example, the court granted a distributor's motion for judgment on the pleadings after finding that the plaintiffs' state-law claims were preempted.

2012 U.S. Dist. LEXIS 5817, at *26-28.  The plaintiffs in *Fosamax* asserted a number of claims against "the authorized distributor of branded Fosamax" that "emanated from a general theory of failure to warn," including "defective design, negligence, fraud, misrepresentation, breach of express and implied warranties, violation of consumer protection statutes, restitution, and loss of consortium."  *Id.* at *20-21 (citation omitted).  In rejecting the plaintiffs' claims, the district court ruled that "[a]s a distributor of Fosamax, [the distributor] ha[d] no power to change Fosamax labeling."  *Id.* at *27.  According to the court, "[t]hat power lies with the applicant who . . . seek[s] approval to market Fosamax" – in that case, Merck.  *Id.*  Additionally, the court noted that if the FDA had become aware of new safety information in connection with Fosamax use that it believed should be included in the labeling, the FDA would have notified Merck – not the distributor.  *Id.*  Because the distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it.'"  *Id.* at *27-28 (quoting *Mensing*, 564 U.S. at 620-21).  Accordingly, the court found that "the state law claims brought against [the distributor] [were] preempted."  *Id.* at *28.

45.     Here, plaintiff's claims against DJD and Dinardo all appear to rest on a theory of failure to warn.  (*Compare* Am. Compl. ¶¶ 205-214 (alleging negligence based on DJD and Dinardo failing to provide information), *with id.* ¶¶ 215-225 (alleging claims for manufacturing and design defect only against the removing defendants); *see also id.* ¶ 33 ("Distributor played an integral role in the omissions and misinformation that seduced hospital administrators and surgeons in their geographic area, including [p]laintiff's hospital and surgeon, in particular, to utilize the Pinnacle."); *id.* ¶ 34 ("[T]hese injuries were proximately caused by J&J's and Distributor's fraudulent, intentional, and/or negligent omissions and misrepresentations

regarding the clinical risks and benefits of the Pinnacle."); *id.* ¶ 106 ("Distributor knew or should have known that this messaging regarding lubrication, run-in wear, and survivorship would misrepresent the safety and efficacy of the Pinnacle."); *id.* ¶ 140 ("Distributor also failed to inform [p]laintiff's surgeon of its independent knowledge regarding failures of MoM implants, including the ASR and Pinnacle.").)  However, neither DJD nor Dinardo had any "authority" to effectuate changes to the Pinnacle Cup System or its labeling.  *In re Fosamax*, 2012 U.S. Dist. LEXIS 5817, at *26-28.[5]

46.     In sum, all of plaintiff's claims against DJD and Dinardo have no reasonable possibility of success because they are preempted, providing an independent basis for finding that they are fraudulently joined.

### C.   <u>The Amount In Controversy Exceeds $75,000</u>

47.     The amount-in-controversy requirement for diversity jurisdiction is satisfied in this case because it is clear from the face of plaintiff's Amended Complaint that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).

48.     Plaintiff in this action claims that he "suffered injuries, including but not limited to significant pain, tissue destruction, bone destruction, metal wear, and toxic heavy metal poisoning" (*see* Am. Compl. ¶ 197), as well as "emotional trauma and distress" (*see id.* ¶ 201).

49.     It is widely recognized that personal injury claims facially meet the $75,000 jurisdictional threshold.  *See, e.g.*, *In re Rezulin*, 133 F. Supp. 2d at 296 (finding that a complaint

---

[5]     While the *In re Stryker* court rejected this argument, *see In re Stryker*, 2017 WL 3815937, at *4, that case was wrongly decided.  There, the court reasoned that the removing defendants "had[] not provided th[e] court with the regulatory framework to reach the . . . conclusion" that *Mensing* impossibility preemption applied to distributors of **medical devices** as opposed to generic **drug** distributors.  *Id.*  However, even though devices like the Pinnacle Cup System undergo a different review process from prescription drugs, the strictures imposed by FDA oversight are analytically indistinguishable.

alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *Smith v. Wyeth Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663 (E.D. Pa. Apr. 22, 2009) (same).

50.     Given plaintiff's claim that he has suffered substantial personal injuries, it is evident that the amount of recovery sought by plaintiff exceeds $75,000.

## II.     REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

51.     J&J was served with plaintiff's Amended Complaint on September 20, 2021. DePuy and Johnson & Johnson Services, Inc. were served on September 28, 2021.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

52.     The Superior Court of Suffolk County is located within the District of Massachusetts.  *See* 28 U.S.C. §§ 101; 1441(a).

53.     None of the removing defendants is a citizen of the Commonwealth of Massachusetts, the State where this action was brought.  *See* 28 U.S.C. § 1441(b).

54.     It is well settled that co-defendants who are fraudulently joined need not join in the removal.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 109, 117 (D. Mass. 2006).  As set forth above, DSS, DJD and Dinardo are fraudulently joined.  *See* Section I, above.  Therefore, they need not consent to removal.

55.     No previous application has been made for the relief requested herein.

56.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon removing defendants, which papers include the Amended Complaint, are attached as Exhibit 2.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served

upon counsel for plaintiff and a copy is being filed with the Clerk of the Superior Court of

Suffolk County.

57.     WHEREFORE, removing defendants respectfully remove this action from the

Superior Court of Suffolk County, in the Commonwealth of Massachusetts, bearing Number 21-

0683 E to this Court.

Dated: October 11, 2021

<div style="margin-left: 40%;">

MEDICAL DEVICE BUSINESS
SERVICES, INC., JOHNSON &
JOHNSON, AND JOHNSON &
JOHNSON SERVICES, INC.

By its attorneys,

*/s/ Robyn S. Maguire*
Robyn S. Maguire (BBO No. 660372)
BARNES & THORNBURG LLP
One Marina Park Dr., Suite 1530
Boston, MA 02210
(617) 316-5316
rmaguire@btlaw.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document, filed through the ECF system,
will be sent electronically to the registered participants of record as defined in the Notice of
Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered
participants on October 11, 2021.

<div style="margin-left: 40%;">

*/s/ Robyn S. Maguire*
Robyn S. Maguire

</div>